# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALLECE GAINES COLE | CIVIL ACTION |
| VERSUS | 3:22-CV-00318 |
| GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY | |

### RULING

This matter is before the Court on Defendant, Garrison Property and Casualty Insurance Company ("Garrison" or "Defendant")'s *Motion to Vacate the Appraisal Award* provided to Plaintiff, Allece Gaines Cole ("Cole" or "Plaintiff").[1] The Court considered Defendant's moving brief[2] and Plaintiff's opposition.[3] On September 29, 2023, the Court denied Defendant's motion to vacate with written reasons to follow.[4] The Court now provides such reasons below.

### I. BACKGROUND FACTS & PROCEDURAL HISTORY

Cole resides in Ascension, Louisiana.[5] Garrison is a Texas-based company and is incorporated under Texas Law.[6] Cole's property, which is at issue here, is covered by an insurance policy with Garrison (the "Policy"). The contested appraisal set the Actual Cash Value of Loss ("ACV")[7] to Cole's property in the following amounts: (i) $190,816.87

---

[1] Rec. Doc. No. 16.
[2] Rec. Doc. No. 16-1.
[3] Rec. Doc. No. 26-1.
[4] Rec. Doc. No. 32.
[5] Rec. Doc. No. 1, p.1.
[6] *Id*.
[7] *See* Rec. Doc. No. 16-2, Ex. I (The Certified Policy defines the "Actual Cash Value" as "the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for a deterioration, depreciation, and obsolescence.")

in Building Loss, (ii) $4,235.39 in Loss to Other Structures, (iii) $17,689.59 in Loss of Contents, and (iv) $7,548.00 in Loss of Use, for a total alleged loss of $220,289.85.[8] The parties are diverse and the amount-in-controversy requirement has been met to establish the Court's jurisdiction over this matter.[9]

In October 2020, Hurricane Zeta affected parts of Ascension Parish.[10] As a result, Cole's property suffered property damage.[11] Cole filed a claim with Garrison.[12] A dispute arose between the parties over the damage evaluation. Cole then invoked the appraisal process pursuant to the appraisal clause of the Policy.[13] The clause states:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In the event, each party will choose a competent and impartial appraiser within 20 days after receiving the written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.[14]

Cole retained Luke Irwin ("Irwin") as an appraiser, and Garrison retained Gregory Landes ("Landes") as an appraiser. Scott Dowdy ("Dowdy") was assigned as the umpire in the event of dispute.[15]

---

[8] Rec. Doc. No. 16-2, Ex. H.
[9] *See* 28 U.S. Code § 1132(a)(1) ("(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between— (1) citizens of different States").
[10] Rec. Doc. No. 16-1, p.1.
[11] *Id*.
[12] *Id*.
[13] *Id*.
[14] Rec. Doc. No. 26-1, p. 7.
[15] Rec. Doc. No. 16-1, p. 1.

Irwin and Landes planned to jointly inspect the property on September 2, 2021.[16] Due to Hurricane Ida, this inspection was delayed.[17] On September 24th and November 9th, Landes attempted to reschedule the joint inspection with Irwin.[18] On December 8th, Irwin responded to Landes, suggesting each solo inspect the property given his tight schedule. Landes confirmed with Irwin that while, solo inspection was "not customarily done," he would inspect the roof surface of the property.[19]

Thereafter, Irwin and Landes could not agree over whether they were expected to limit their inspection of the property to the roof. Irwin informed Landes that he would reach out to the parties' counsel to confirm the scope of the inspection.[20] On February 15, 2022, Irwin contacted Landes requesting his position on the appraisal and indicated that the matter was outstanding.[21] The next day, the two appraisers spoke on the phone. Landes advised that in the coming week he was traveling to North Carolina to handle a family matter, but if Irwin sent him his "ESX file"[22], he would review Irwin's position and provide an opposition at the end of the work week.[23] Three days later, Irwin followed up with Landes and informed him that he wanted to settle the matter by the "end of the month."[24] Irwin provided his position and asked if Landes needed assistance inspecting the property.

---

[16] *Id.* at Ex. B.
[17] Rec. Doc. No. 26-1, p. 3.
[18] Rec. Doc. No. 16-2, Ex. C-D.
[19] *Id.* at Ex. E-F.
[20] *Id.* at G; Rec. Doc. No. 26-2, Ex. G-I.
[21] Rec. Doc. No. 26-2, Ex. J.
[22] Plaintiff defined the ESX file as "the electronic document file type (.esx) for estimates generated using Xactimate estimating software that is utilized industry-wide by contractors, public adjusters, claim adjusters, and appraisers. The Xactimate software creates a detailed written report; the ESX file contains data entered by the creator based upon measurements and observations following inspection of the property." Rec. Doc. 26-1, p. 5 at n. 2.
[23] Rec. Doc. No. 26-2, Ex. R.
[24] *Id.* at Ex. K.

On March 9th, having not heard from Landes, Irwin requested that the umpire, Dowdy, assist in wrapping up the appraisal process and copied Landes on the email exchange. Irwin provided Dowdy with his position and the sky measure[25] of the property.[26] The following day, Landes responded to Dowdy and Irwin. He told them he was back in Baton Rouge and "[t]here was no reason to involve the Umpire at this time" because the appraisers could "get this ironed out" amongst themselves.[27] In response, Irwin informed Dowdy and Landes that Cole's claim was filed 498 days ago and the appraisal had been pending for 353 days. He again notified Landes that if they could not come to an agreement that day, he would be invoking Dowdy's assistance. Irwin provided Landes with his suggested award letter, stating the award was "fair and just."[28]

On March 11th, Landes responded saying, "I am no longer authorized to handle this file as my association with Envista Forensics has ended."[29] Garrison hired Landes through Envista Forensics.[30] The next day, Irwin contacted to Dowdy to finalize the appraisal. Irwin informed Dowdy that, "[t]here [was] no verbal, written, nor implied disagreement" on his position or any evidence to refute his position and valuation on the amount of loss.[31] Irwin provided Dowdy with his signed appraisal. Dowdy then requested that each appraiser provide their position and scheduled a panel conference for the following week. Dowdy informed Landes that his disaffiliation with Envista Forensics did

---

[25] This term has not been defined by the parties. But Plaintiff provided a link to the "sky measure" in Exhibit L of her opposition. From the Court's review of this link, the sky measure provides the measurements of the property's roof, aerial photos of the roof, and level of damage risk associated with tornadoes, straight line winds, hurricane winds, and hail.
[26] Rec. Doc. No. 26-2, Ex. L.
[27] *Id.* at Ex. M.
[28] *Id.* at Ex. N.
[29] *Id.* at Ex. O.
[30] *See* Rec. Doc. 16-1, Ex. B (showing Landes' email signature identifying him as a regional consultant for Envista Forensics); *See also* Rec. Doc. 26-2, Ex. C, p.1.
[31] Rec. Doc. 26-2, Ex. P.

not excuse him from the process as he was "named as the appraiser, not Envista Forensics."[32] Both appraisers provided their view of the events that transpired leading up to this panel conference.[33] On March 15th, the appraisal award was signed by Dowdy.[34] The appraisal award was executed and the process closed without Landes agreeing to the award or providing his position on the loss.

Garrison failed to pay Cole the appraisal award and Cole brought suit. Now, Garrison seeks to vacate the appraisal award contending that the award is not in compliance with terms of the Policy.

II.   LAW

The issue is whether the appraisal process complied with the Policy when Garrison's designated appraiser did not participate in the process before the award was executed. This conflict arises under state contract law. The Fifth Circuit has held, "[t]o determine issues of state law, we look to final decisions of the state's highest court, and when there is no ruling by that court, then we have the duty to determine as best we can what the state's highest court would decide."[35]

The Supreme Court of Louisiana has not addressed this specific issue. But, under Louisiana Law, "[a]n insurance policy is a contract between the parties and should be

---

[32] *Id.* at Ex. Q.
[33] *Id.* at Ex. R-S.
[34] Rec. Doc. No. 16-2, Ex H.
[35] *TMM Invs., Ltd. v. Ohio Cas. Ins. Co.*, 730 F.3d 466 (5th Cir. 2013) (quoting *Westlake Petrochems., L.L.C. v. United Polychem, Inc.*, 688 F.3d 232, 238 n. 5 (5th Cir.2012) (citation omitted)); *See Richards v. Louisiana Citizens Prop. Ins. Corp.,* 623 F.3d 241, 244 (5th Cir. 2010) ("When the state's highest court has not spoken on an issue, a federal court must determine as best it can how that court would rule if the issue were before it.")

construed by using the general rules interpretation set forth in the Louisiana Civil Code."[36] The Code provides that "[i]nterpretation of a contract is the determination of the common intent of the parties."[37] "[A] provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."[38] And, "when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[39]

Appraisal provisions in insurance contracts are also strictly construed.[40] In addition the Policy states, "[a] decision agreed to by any two [panel members] will be binding," thus the burden of showing the award should not be confirmed falls on the party who challenges it.[41] Here, Garrison carries the burden.

In a notably similar case, *St. Charles Parish Hospital Service Dist. No. 1 v. United Fire and Casualty Co*, the Eastern District of Louisiana held an agreement between one party's appraiser and the umpire was valid even though appraisers for both parties were not involved in every step of the appraisal process.[42] The case arose over an insurance

---

[36] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Cadwallader v. Allstate Ins. Co.*, 2002-1637 (La. 6/27/03), 848 So. 2d 577, 580); *Gruver v. Louisiana Through Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. CV 18-772-SDD-EWD, 2023 WL 1485043, *2 (M.D. La. Feb. 2, 2023); *See Sims v. Mulhearn Funeral Home, Inc.*, 2007-0054 (La. 5/22/07), 956 So. 2d 583, 589 ("First and foremost is the rule that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code") (citation omitted).
[37] La. Civ. Code art. 2046.
[38] La. Civ. Code art. 2056.
[39] La. Civ. Code art. 2046.
[40] *In re Katrina at 206* (citing La. Civ. Code 2045); *See Branch v. Springfield Fire & Marine Ins. Co. of Springfield, Mass.*, 198 La. 720, 728-29 (1941) ("Policy provisions requiring the insured to submit the amount of his loss to private appraisal, although valid, are somewhat in derogation of his right to have his dispute determined by the courts and should be strictly construed.")
[41] *St. Charles Par. Hosp. Serv. Dist. No. 1 v. United Fire & Cas.* Co., 681 F. Supp. 2d 748, 754 (E.D. La. 2010) (citing La. Civ. Code art. 2045-46; *Wooley v. Lucksinger*, 14 So.3d 311, 473 (La. Ct. App. 2008) (burden of proving invalidity of clear choice-of-law provision in contract falls upon party seeking to invalidate it); *Continental Eagle Corp. v. Tanner & Co. Ginning*, 663 So.2d 204, 206 (La. Ct. App.1995) (same).
[42] *See Id.* at 756 ("Furthermore, once both appraisers have an opportunity to participate in the appraisal process, the eventual absence of one appraiser is not grounds to invalidate an award.")

dispute in the wake of Hurricane Katrina between a hospital, the plaintiff, and its insurer.[43] The plaintiff invoked the appraisal clause of its insurance policy. The parties then designated appraisers. Once materials were submitted to the umpire, only the plaintiff's appraiser and the selected umpire signed off on the appraisal award. The defendant insurer then challenged the validity of the appraisal on the grounds that its appraiser was not present at the final panel meetings. Consequently, the defendant's appraiser did not participate in calculating the final numbers to execute the award amount.[44]

The appraisal clause of the policy in that case explicitly stated, "[a] decision agreed to by any two will be binding…". The court found that appraisal clauses should be "strictly construed" and that clauses, such as this, which allow agreements between only two of the panel members, are enforceable under Louisiana Law.[45] The court explained, "once both appraisers have an opportunity to participate in the appraisal process, the eventual absence of one appraiser is not grounds to invalidate the award."[46] In that case, the defendant's appraiser reviewed the materials submitted to the umpire and was encouraged to submit rebuttal evidence.[47] Thus, the court found he had sufficient opportunity to participate, so there was no need to invalidate the award merely because he was excluded from final discussions.[48]

---

[43] *Id.* at 751.
[44] *Id.* at 754.
[45] *Id.* at 753.
[46] *Id.* at 756.
[47] *Id.*
[48] *See Id.* at 756, 765 (explaining that the absence of the defendant's appraiser would not be grounds to invalidate the award but holding that the court would not vacate or confirm the award for other reasons).

In the absence of Louisiana Supreme Court precedent, the Court looks to the state's appellate decisions.[49] In *Farber v. American National Property & Casualty Company*, the Louisiana Third Circuit Court of Appeal held that, where a party to an insurance policy entirely fails to appoint an appraiser after an appraisal clause has been invoked, such failure does not invalidate an award agreed to by the other party's appraiser and the selected umpire.[50] Here, the defendant was aware the plaintiff invoked the appraisal clause but did not participate in the appraisal process or object to the process proceeding. The court noted that once the defendant was informed of the appraisal award, the defendant took over seven months to file a motion to nullify the umpire's appointment and decision.[51] The defendant's delayed action went "far beyond" the three-month window allotted for vacating or modifying the appraisal award.[52] The court affirmed the lower court's finding that the defendant "simply chos[e] not to participate in the appraisal process" and as such, there was no basis for vacating the award.[53]

## III.   ANALYSIS

Garrison argues that the appraisal award should be vacated because (1) Cole's appraiser, Irwin, exceeded the scope of the inspection set by the Policy, and (2) the parties failed to allow Garrison's appraiser to have the opportunity to provide a separate appraisal estimate. The Court disagrees with Defendant's contentions.

---

[49] *See TS & C Invs., L.L.C. v. Beusa Energy, Inc.,* 637 F. Supp. 2d 370 (W.D. La. 2009) ("Where the state's highest court has not yet spoken on an issue, the federal district court may look to the state's appellate courts for guidance") (citing *American Nat. General Ins. Co. v. Ryan*, 274 F.3d 319, 328 (5th Cir. 2001), citing *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237, (1940) (stating that a decision by an intermediate appellate state court should not be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise).
[50] 2008-821 (La. App. 3 Cir. 12/10/08), 999 So. 2d 328, writ denied, 2009-0053 (La. 3/6/09), 3 So. 3d 488.
[51] *Id.* at 334.
[52] *Id*.
[53] *Id*.

First, the appraisal award was not outside the scope of the Policy. As the Fifth Circuit instructs, appraisal clauses are to be strictly construed.[54] The Policy explicitly states the appraisers will "separately set the amount of loss." But there is nothing in the appraisal clause that limits or restricts the definition of "loss."[55] Thus, the Court reads this clause as providing the appraisers with the discretion to determine what this "loss" is, based on their inspections of the property at issue. Here, the appraisal award executed by Irwin and Dowdy lists the amount of loss of the building, structures, and contents.[56] The experts in this appraisal process have determined through their inspection that this constitutes the "loss" of the property, Further, Defendant contends that Dowdy and Irwin did not comply with the Policy because the appraisal exceeded the scope of the inspection. However, the record does not support this. The record shows there was an email exchange between Irwin and Landes regarding whether the scope of the loss inspection was limited to the roof. Irwin told Landes he would consult the parties on the scope, but Garrison has not provided any evidence that confirms the parties agreed to limit the scope of the inspection.

Furthermore, the Louisiana Civil Code requires that in circumstances of doubt in a contract's meaning, its interpretation "should be in favor of the party who did not furnish its text."[57] Consequently, the Court interprets the appraisal clause in the light that favors the insured.

Second, the Court rejects Defendant's argument that Landes did not have an opportunity to provide a separate estimate. The record reflects that the parties provided

---

[54] *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 206 (5th Cir. 2007) (citing La. Civ. Code art. 2056).
[55] Rec. Doc. No. 26-1, p. 7.
[56] Rec. Doc. No. 16-2, Ex. H.
[57] La. Civ. Code art. 2056.

ample opportunity for Landes to do so. Like the insurer's appraiser in *Farber*, Landes chose not to participate in the appraisal process. Although the matter had been pending for 353 days, Landes never inspected the property. Moreover, between February and March 2022, Irwin consistently followed up with Landes, but Landes did not provide a date for when he intended to inspect the property and expressed no opposition to Irwin's appraisal. The Court can appreciate delays that may have occurred while Landes tended to his family matter but Landes informed Irwin of his family matter long after this appraisal process began. There were opportunities to inspect the property prior to his trip to North Carolina. Additionally, once Landes returned to Baton Rouge from North Carolina, Landes appeared ready to complete the appraisal process. He informed Irwin and Dowdy that the appraisers could "get this ironed out," and "[t]here [was] no reason to involve the Umpire at this time."[58] Yet, only two days later, Landes reverted, notifying them that he was "no longer authorized" to handle the appraisal.[59] So while Defendant contends that Irwin and Dowdy failed to provide Landes with an opportunity to participate, this is not supported by the record.

Finally, whether Landes had ample opportunity to perform an inspection and appraisal is not dispositive because an appraisal award was agreed upon by Irwin and Dowdy. "[W]hen the words of a contract are clear and explicit..., no further interpretation may be made in search of the parties' intent."[60] The Policy provides that "[a] decision agreed to by any two [appraisers] will set the amount of loss."[61] And as explained by the Eastern District, once both appraisers have an opportunity to participate in the process,

---

[58] Rec. Doc. No. 26-2, Ex. M.
[59] *Id.* at Ex. O.
[60] La. Civ. Code art. 2046.
[61] Rec. Doc. No. 26-1, p. 7.

"the eventual absence of one appraiser is not grounds to invalidate the award."[62] The Court is persuaded by this reasoning. Landes not only had an opportunity to provide a position but attempted to terminate his responsibility in this process.

In her opposition to the Defendant's Motion to Vacate the Appraisal Award, the Plaintiff seeks enforcement of the appraisal award. There is no Motion by the Plaintiff before the Court and the Court declines to order relief informally advanced by memorandum.[63]

## IV. CONCLUSION

For the foregoing reasons, the Motion to Vacate the Appraisal Award[64] filed by Defendant is hereby DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this __26th__ day of October, 2023.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[62] *St. Charles Par. Hosp. Serv. Dist. No. 1 v. United Fire & Cas*. Co., 681 F. Supp. 2d 748, 756 (E.D. La. 2010).
[63] *See* Local Rules 7(b), (d); *See also Jones v. New Orleans Reg'l Physician Hosp. Org.,* No. CV 17-8817, 2019 WL 7558109 (E.D. La. Aug. 29, 2019) (denying Plaintiffs' request for reconsideration of their motion because seeking this request through an opposition to another motion was "not the appropriate vehicle through which to seek such a relief.") *See also Norwicz v. Markel Int'l Ins. Co.*, No. CIV.108CV602HSOJMR, 2009 WL 2500195 (S.D. Miss. Aug. 13, 2009) (finding Plaintiff's request to compel an appraisal was not before the court because a formal motion was not filed as required by the local rules).
[64] Rec. Doc. No. 16.